## Walker *et al. versus* Walker.

1. To authorize the admission of a deed as *ancient*, where the only circumstance relied on is possession, nothing less than proof of possession for thirty years in conformity with the deed is sufficient to raise the presumption of its authenticity.

[Walker *v.* Walker.]

2. Where proof of possession cannot be had, the deed may be read, if its genuineness be satisfactorily established by other circumstances.

3. Circumstances in this case sufficient to authorize a deed to go to the jury as an *ancient* deed.

4. Children agreed without the knowledge of their father to release to one of them all their right to the father's land at his death, if that one would maintain the father for life. Such contract was not against public policy.

5. Two of the children were married women who did not acknowledge the deed as such. *Held,* that it was binding on the others.

6. The deed was not a legal conveyance, but the agreement having been performed by the maintenance of the father; on his death it would be supported in equity as an estoppel.

November 21st 1870. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Mercer county :* No. 85, to October and November Term 1870.

This was an action of ejectment brought September 21st 1867, by Andrew Walker against William Walker for an undivided fifth part of a tract of 156 acres of land. The plaintiff having died, Andrew J. Walker and others, his heirs at law, were, on the 14th of August 1869, substituted as plaintiffs.

Robert Walker had been the owner of the whole tract. He died February 8th 1834, having made a will which was dated March 7th 1832, and proved June 9th 1834. He devised to his wife "the homestead farm" (that in controversy) " to manage and do as she thinks fit as long as she remains my widow." If she should marry, the farm was to be sold and the proceeds divided as directed in the will. At her death "the remainder of the property, place and the whole estate to be divided among my children as equal as possible."

The testator left his widow, Margaret, and eight children, Andrew, the plaintiff, William, the defendant, Elizabeth, Ann, Robert and Samuel Walker, Jane intermarried with William Sample, and Mary intermarried with William Gibson. The testator's widow remained unmarried, and died September 26th 1846, the same children surviving her. Jane Sample and Samuel Walker afterwards died intestate and without issue. The land had been improved and cultivated ever since it had been occupied by Robert Walker, the testator, and had been assessed from 1835 to 1869, inclusive, in the name of William Walker, the defendant.

The facts above stated appeared by the plaintiff's evidence and by admissions on the trial, May 17th 1870, before Trunkey, P. J.

The defendant called J. Hoagland, who testified that the defendant had lived on the farm since 1832 with his father, and with his mother until her death. The father, who was an old man at the time of his death, had failed in health a few years before that time. The defendant built a new house, to which he moved after he married; Ann, his sister, continued to live in the

old mansion-house. Jane married a few years before her father's death, and about 1864 or 1865 lived with Ann on the farm. Witness was a witness to the signature of Samuel Walker to a deed shown him; he saw it in the possession of the defendant at the time of its date. William and Mary Gibson had not then signed the deed. They declined to sign, although urged by the witness; he saw the deed in the defendant's possession often after he witnessed it, a good many years before the suit was brought.

Defendant gave evidence by other witnesses that the deed had been in his possession about a year before the trial.

The defendant then offered the deed in evidence. It was objected to by the plaintiffs, admitted by the court and a bill of exceptions sealed.

The deed is as follows :—

"To all to whom these presents shall come: Robert Walker, Jr., of Allegheny county and state of Pennsylvania, Andrew Walker, Elizabeth Walker, Ann Walker, Jane intermarried with William Sample, Mary intermarried with William Gibson, all of Mercer county and state aforesaid, and Samuel Walker, of Columbiana county and state of Ohio, send greeting : Whereas, Robert Walker, of Mercer county and state of Pennsylvania, father of the aforesaid Robert, Andrew, Elizabeth, Ann, Jane, Mary and Samuel, being old and in an infirm state of health and unable to manage his property and estate—William Walker, of Mercer county aforesaid, also a son of said Robert, at our special instance and request, having agreed to remain with the said Robert during his lifetime and take care of him and manage his estate in a proper manner. Now, therefore, know ye, that the said Robert, Andrew, Elizabeth, Ann, William Sample and Jane his wife, William Gibson and Mary his wife, and Samuel Walker, for and in consideration of the premises above set forth, and of the further sum of one dollar, * * * have remised, released and for ever quit claimed, and by these presents do remise, release and for ever quit claim unto the said William Walker, his heirs and assigns for ever, all and all manner of right, title, interest, claim and demand which we have, or may hereafter have as heirs of said Robert Walker, of, in, to, or out of the following described tract of land [describing the land in suit], containing one hundred and fifty-six acres and allowance, it being the same tract on which said Robert Walker now lives, with the appertenances which may accrue to them, the said Robert, Elizabeth, Andrew, Ann, William Sample and Jane his wife, in right of said Jane, William Gibson and Mary his wife, in right of said Mary, and Samuel, by the death of the aforesaid Robert Walker, so that the said William Walker, his heirs and assigns, shall and may have, hold and enjoy the said tract of land with the appertenances and every part and

[Walker *v.* Walker.]

parcel thereof, freely and clearly exonerated and discharged from the said right, title, interest, claim or demand of, in, or to the said tract of land or any part thereof, at any time hereafter shall or may have, claim, challenge, demand or prosecute against the said William Walker, his heirs and assigns or any of them, but of and from the same shall be barred and for ever excluded by these presents. In witness whereof the above-named Robert Walker, Jr., Andrew Walker, Elizabeth Walker, Ann Walker, William Sample and Jane his wife, William Gibson and Mary his wife, and Samuel Walker, have hereunto set their hands and seals, this twenty-second day of May, A. D. 1832.

Robert Walker, } Andrew Walker. [L. S.]
Witness for Andrew Walker. [L. S.]

Test:
D. Dunmire
for E. & A. Walker. } Elizabeth her x mark. Walker. [L. S.]

Ann Walker. [L. S.]

William Sample. [L. S.]

Jane her x mark. Sample. [L. S.]

John McDowell } R. Walker, Junior. [L. S.]
William Gibson. [L. S.]
Mary Gibson. [L. S.]

Test: John Hoagland
for S. Walker. } Samuel Walker. [L. S.]"

The names of William Gibson and Mary Gibson were signed in pencil, but not claimed to be in their handwriting.

The defendant gave evidence by a number of witnesses that after his mother's death he had built a house on the premises at a cost of $600 or $700; that the plaintiff had lived a few miles from the premises until his death; that defendant had occupied them since 1832; that defendant, his mother and sister Ann had lived together in the old house until the new one was built; Ann had lived in the old house since; that Andrew was frequently there, and he and others of the heirs claimed a share in the land after the coal excitement started.

Plaintiffs in rebuttal gave evidence that the defendant on several occasions had expressed doubts as to the validity of his title; that he had tried to purchase his brother Andrew's interest in the land; that he had paid to several of the heirs, money as their shares of the proceeds of a coal-lease in the land; that the heirs had claimed that they had a share in the land.

On her cross-examination, Ann, one of defendant's sisters, who was a witness, said that she and her sister Elizabeth signed the deed together, and also that defendant always claimed the land as his own; she testified that D. Dunmire, one of the witnesses to the deed, was present when it was executed, and that the defendant was to have the land and make what he could out of it.

[Walker *v.* Walker.]

The plaintiffs asked the court to charge:—

1. That if the jury believe the evidence that Mary Gibson and Jane Sample were married women at the time of the execution of the deed in evidence, there being no acknowledgment as required by law, said deed is not binding upon the parties who signed the same, and is null and void.

3. That as there is no evidence in the case that Robert Walker, the owner of said land, agreed or consented to or knew of said deed, it must be presumed that he did not agree or consent to or know of the same, and even if said deed is properly executed, it was not only a legal fraud upon said Robert Walker, but against public policy and justice, and consequently is null and void.

4. That the said deed does not estop the plaintiffs from recovering in this case.

The defendant asked the court to charge:—

1. That although the agreement or conveyance by Andrew Walker to the defendant on the 22d day of May 1832, of all the interest he then had or might thereafter have in the real estate of his father therein described, was executory, it will be enforced in equity, if founded upon a sufficient consideration.

2. That if the jury believe from the evidence that the defendant remained with and managed the estate of his father according to the provisions of said agreement or conveyance, that would be a sufficient consideration to support it.

The court, after stating the original title, &c., charged:—

" To defeat the plaintiffs' recovery the defendant alleges that Andrew Walker and the other children of Robert Walker, deceased, conveyed their interest in the land to defendant by deed dated May 22d 1832. Did Andrew Walker execute this conveyance, at or about the time it bears date? Under the testimony given previous to its being offered in evidence it was admitted as an ancient deed, without actual proof of the genuineness of the signature purporting to be Andrew Walker's. That it has been so admitted does not relieve you from determining whether or not it was duly executed. The plaintiffs are not precluded from calling it in question, and offering evidence tending to show that the signatures are not genuine, or other evidence to impeach it. Did William Walker have the custody of this writing from the time or about the time it bears date? Were all the signatures attached about that time, and before the death of Robert Walker, and are some of them actually proven to be genuine by a subscribing witness and one of the parties? Did the defendant perform his part of the agreement recited in the writing? Did the parties, until some five or six years ago, so act in reference to this land as to show that the defendant had such possession as the nature of the case would admit, and acquiesced in by the other? If you so find, and there is no sufficient evidence to rebut it, you may infer that it was executed and delivered by Andrew Walker. Should

[Walker *v.* Walker.]

you find that it was not so executed, your verdict will be for the plaintiffs.

" If executed, then what is the effect of the agreement or conveyance? On its face, as well as by other proof, it appears to have been made between the children of Robert Walker in his lifetime. It recites that their father was old and infirm in health, and unable to manage his property and estate, and that William, at the special instance and request of the others, had agreed to remain with their father during his life and take care of him and his estate in a proper manner. This is the real inducement and consideration, for which the other children released and for ever quit claimed unto William Walker, his heirs and assigns, their right, title and interest which they had, or might afterwards have as heirs of Robert Walker in the land described, being the same in suit, so that the said William Walker, his heirs and assigns shall and may have the land with the appertenances free and clear of any claim or demand of the grantor, and so as utterly to bar and exclude the grantor from the said land or any part thereof for ever. At the time of making this deed none of the parties had any interest in the land, and it did not and cannot operate as a legal conveyance thereof. Robert Walker could have disposed of the land by deed, or devised it by will, as well as if no such conveyance had been made. He was not bound to accept the offices of his son William to take care of him and his property. Whether or not he had other property than this land there is no evidence. His will is dated prior to the date of the deed. Did William perform his agreement as recited in the deed? This is a material question, and you must answer it from the evidence. Without actual performance by him in good faith of his part of the agreement he ought not to have the benefit in equity of the deed. This was a valuable consideration to be performed, and if the reason set out in the recital be true, one that all the parties naturally felt an interest in. Conveyances of expectant interests in land by those who in the future may be entitled to it as heirs at law, are not to be encouraged, and will always be carefully scrutinized. If attended by any fraud or imposition, they will not in equity estop the heir from setting up his claim and holding the land. [But if all the children of an aged and infirm parent, without any fraud or imposition, make an agreement by which one of their number is to remain with and take care of him and his property during his lifetime, and for this make a conveyance of a certain piece of land owned by such parent, those conveying expressly stipulating that they shall for ever be barred and excluded from setting up any title or claim to said land as against the grantee or his heirs, it is not a legal fraud upon the parent, and if it has been performed with entire good faith without imposition on the part of the grantee upon the parent, will not be held

void in equity on the ground of public policy and justice.]  [The grantee undertakes to perform certain things, and if he does so, it is a valuable and sufficient consideration to support a conveyance in equity.]  He runs the risk of obtaining nothing for his care and services, for the parent may dispose of the land as he chooses.  His performance may exceed its actual value, the value of the land, or it may fall far short of it.  As between children such an agreement may be fairly made, and be performed by one party with entire good faith, acquiesced in by all connected with it, and then after the lapse of many years, it ought not to be avoided by one of the grantors.  Were the transaction of a recent date, the performance of the agreement and every other essential should be proved satisfactorily by direct evidence.  After the lapse of over thirty years it is difficult to prove clearly every point by direct evidence, and the jury may consider the acts of the respective parties and their claims to the land along with the other evidence.  How has William occupied the land and claimed it?  Some five or six years ago, you may infer from the evidence, the land was considered valuable for its coal, and then and since Andrew Walker and some of the others asserted claims to the land.  Did they ever do so before?  These and other like questions you will consider.  Robert Walker was in the possession of the land up to the time of his death.  By the will and admitted facts, his widow, Margaret, was entitled to the possession during her life, and none of the parties had a right to enter.  Upon her decease, the heirs or rather the devisees had the right to the possession in common.  In the absence of evidence to show otherwise those in the actual occupancy will not be presumed to hold adversely to the others, and those in possession are presumed to hold for all.  Upon the admitted facts, the Statute of Limitations does not bar the plaintiffs.  The evidence falls short of showing an actual ouster as between tenants in common, and an exclusive and hostile possession on part of defendant for any length of time.  But you will consider the evidence as to the actual occupancy of William Walker, and what he did, not only in the lifetime of his father, and of his mother after his decease and since her decease and prior to the commencement of this suit, as bearing upon the question of actual performance by him of his agreement, how he held, and how the grantors in the deed treated his holding.  [If from all the evidence you find that the agreement recited in the deed was fairly made without imposition, in good faith performed by William Walker in the manner hereinbefore stated, with such actual occupancy and to as full extent as was consistent with the ownership of the land by Robert Walker when living, and of Margaret Walker during her life, each of them acquiescing in his occupancy and use of the land, that he claimed to hold it under the agreement or deed, and that for about fifteen years after Mar-

[Walker *v.* Walker.]

garet Walker's death, the claim was known and acquiesced in by the grantors, the other heirs and devisees of Robert Walker, deceased, then the deed, though not a legal conveyance of the land, estops the plaintiffs from recovering in this action] the share of Andrew Walker, as one of the heirs and devisees of Robert Walker, deceased—and if you do not so find, the plaintiffs are entitled to recover."

The plaintiffs' 1st point was refused. The court added, "If you find the agreement fairly made and performed as stated in the charge, whatever its effect as to Mary Gibson and Jane Sample, it is binding on the others as if it had been duly acknowledged by them."

The 3d and 4th points were answered in the negative—qualified as in the charge.

The court referred to the charge for the answers to the defendant's points.

The verdict was for the defendant.

On the removal of the record to the Supreme Court by the plaintiffs, they assigned for error the admission of the deed in evidence, the answer to their 1st point, the parts of the charge in brackets as in answer to their remaining points and. to the defendant's points.

*J. H.. Robinson*, for plaintiffs in error.—Before a deed can be admitted as *ancient*, there must be proof of possession of the land for thirty years accompanying it: Shaller *v.* Brand, 6 Binn. 435; Jackson *v.* Blansham, 3 Johns. 292; Healy *v.* Moul, 5 S. & R. 181; McGennis *v.* Allison, 10 Id. 199.; Taylor *v.* Dougherty, 1 W. & S. 327; Zeigler *v.* Houtz, Id. 538; Williams *v.* Hillegas, 5 Barr 493; Minston *v.* Gwathmey, 8 B. Mon. 19; Homer *v.* Cilley, 14 N. H. 85. The deed is not the deed of any of the parties unless signed and delivered by all of them. Mary Gibson and Jane Sample were married women before, at and after the time of its purported execution. And there is no acknowledgment by them of the deed. The signing of it by them was therefore null and void—it is not binding upon them, and the deed is in precisely the same condition as if it had not been signed by them; consequently the deed is not binding upon the other parties. The deed was a legal fraud upon Robert Walker, and against public policy and justice, and consequently null and void: Boynton *v.* Hubbard, 7 Mass. 112; Fitch *v.* Fitch, 8 Pick. 480; Tooly *v.* Dibble, 2 Hill 641; Chesterfield *v.* Jansson, 2 Ves. 157; 1 Atk. 352; King *v.* Hamlet, 2 Myl. & K. 473; Story's Eq. Jur. 339 note; Twisleton *v.* Griffith, 1 P. Wms. 310; Cole *v.* Gibbons, 3 Id. 290; Eichelberger *v.* Jameson, 2 Penna. R. 399; Jackson *v.* Waldron, 13 Wend. 173. There can be no estoppel by covenant of warranty, for there is no such covenant in the deed, but only a

[Walker *v.* Walker.]

covenant of non-claim. This estoppel goes upon the principle that it would be against equity to allow the grantor to recover the land, thereby breaking his covenant and exposing himself to an action to recover its value: Shaw *v.* Galbraith, 7 Barr 113. In this case there is no covenant of warranty. There is a covenant of non-claim. If Robert Walker had devised or sold this land to a stranger, or if the land had been sold or disposed of in any other way, William Walker would not have had any right of action, and there can be no estoppel in this case: 4 Kent's Com. 261 note; Dart *v.* Dart, 7 Conn. 250; Jackson *v.* Winslow, 13 Wend. 189; Right *v.* Bucknell, 2 B. & Ad. 278; McCracken *v.* Wright, 14 Johns. 193; Jackson *v.* Bradford, 4 Wend. 622; Jackson *v.* Hubble, 1 Cowen 613. The burden was on the defendant to show that a fair and adequate consideration had been paid for the land: Story's Eq. Jur. §§ 336, 337, 338.

*Griffith & Mason* and *Stranahan & McDermitt*, for defendant in error.—As to the admission of the deed: McReynolds *v.* Longenberger, 7 P. F. Smith 13; Lau *v.* Mumma, 7 Wright 274. The deed was not against public policy: Bayler *v.* Commonwealth, 4 Id. 37; Hobson *v.* Trevor, 2 P. Wms. 191; Beckley *v.* Newland, Id. 182; Barick *v.* Edwards, 11 Paige 290; McWilliams *v.* Nisly, 2 S. & R. 507; Snell's Eq. 72; Smith's Eq. 231–232; 2 Story's Eq. § 1040. The consideration was the mutual benefit of the chance to the land: Beckley *v.* Newland, 2 P. Wms. 182.

The opinion of the court was delivered, October 9th 1871, by

WILLIAMS, J.—The deed from Andrew Walker and others to William Walker was properly received in evidence. It was admitted as an ancient deed, and the objection to its admission is, that no such accompanying possession was shown under it as would make it evidence without proof of its execution. Where possession is the only circumstance relied on, the rule undoubtedly is, that nothing less than proof of possession for thirty years, in conformity with the deed, is sufficient to raise the presumption of its authenticity. But is proof of actual possession under the deed indispensable? May not its absence be supplied by other satisfactory and corroborative evidence? Whatever may be the leaning of the earlier determinations, it has never been expressly decided in Pennsylvania that nothing but proof of actual possession under the deed for thirty years is sufficient to raise a presumption in favor of its authenticity: Williams *v.* Hillegas, 5 Barr 492; and the weight of authority elsewhere is clearly against the establishment of so rigid a rule; and the prevailing doctrine now is, that where proof of possession cannot be had the deed may be read in evidence, if its genuineness is satisfactorily estab-

17 P. F. SMITH—13

lished by other circumstances : 1 Greenl. Ev. § 144, note 1 ; 3 Phil. Ev. 1310, note 903.   In this case proof of actual or exclusive possession under the deed for thirty years cannot be had.   If genuine, it conveyed no present estate or immediate right of possession ; and no actual or exclusive possession could have been taken under it until the death of Margaret Walker in 1846, to whom a life estate was given by the will of Robert Walker.   But if the defendant did not have the exclusive possession of the land, he had such possession of it for more than thirty years as the parties to the deed intended that he should have ; and why should not this, in connection with the other corroborating circumstances in evidence, be sufficient to raise the presumption of its genuineness without express proof of its execution ?   The deed required the defendant to remain with Robert Walker, who was living on the land and the owner of it, during his lifetime, and to take care of him and manage his estate in a proper manner.   The evidence showed that he lived on the land from the date of the deed until the commencement of this action, a period of more than thirty-five years, that he remained on the land during the lifetime of his father and until the death of his mother, and that since then he has continued to reside there, making improvements and claiming the land as his own ; that it was assessed in his name from 1835 to 1869, and the taxes paid by him during that time ; and that Andrew Walker, who lived within two or three miles, did not set up any claim to the property until a short time before the commencement of this action, when the land began to be considered valuable for its coal.   Besides all this, there was direct proof of the execution of the deed by Samuel Walker by the testimony of the subscribing witness to his signature, and of its execution by Elizabeth Walker and Ann Walker by the admission and testimony of the latter.   There was nothing suspicious about the deed.   It purported to be signed by all the parties named in it with the exception of William Gibson and Mary Gibson, and it was expressly proved that they refused to sign it.   It was shown to have been in existence from the time it bears date, and to have been in the possession of the defendant—the party interested in its preservation and entitled to its custody—and there was nothing in the evidence tending to rebut or weaken the presumption arising from all these corroborating circumstances in favor of the genuineness of the deed, and of its execution by Andrew Walker. The proof given to establish its authenticity was therefore sufficient to allow it to go to the jury.

Nor was there any error in the answer of the court to the points embraced in the assignment.   It does not follow that if Mary Gibson and Jane Sample, who were married women, did not so execute and acknowledge the deed as to make it binding on them, that it was not binding upon the other parties who executed

[Walker *v.* Walker.]

it.   There is nothing on the face of the deed showing that it was not intended to ,operate or have any effect unless it was so executed by all the parties as to be valid and binding on all ; and if the agreement contained in the deed was fairly made and fully performed by the defendant as the jury have found, it is binding on the other parties, whether Mary Gibson and Jane Sample are bound by it or not.   Nor was the deed a legal fraud upon Robert Walker, if he did not actually agree or. consent to it.   As it was made for his benefit, his consent, if necessary, will be presumed, and the law, instead of condemning such a contract as productive of public mischief and against sound public policy, should sanction and uphold it as not only lawful but praiseworthy.   The jury were therefore rightly instructed that if the agreement recited in the deed was performed by the defendant, it was a valuable and sufficient consideration to support a conveyance in equity ; and if it was fairly made without imposition and in good faith performed by the defendant, then the deed, though not a legal conveyance of the land, estops the plaintiffs from recovering in this action.

Judgment affirmed.